1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:20-cv-01278-AWI-SKO |
| Petitioner, | **FINDINGS AND RECOMMENDATION THAT THE PETITION TO ENFORCE ADMINISTRATIVE SUBPOENA BE GRANTED** |
| v. | |
| ERNESTINA M. SAXTON, M.D., | (Doc. 1) |
| Respondent. | **OBJECTIONS DUE: 21 DAYS** |

Before the Court is Petitioner United States of America ("Government")'s Petition to Enforce United States Drug Enforcement Administration ("DEA") Administrative Subpoena R9-19-179200 ("Subpoena") on Ernestina M. Saxton, M.D. ("Respondent"). (Doc. 1.) The Petition was filed on September 4, 2020. (Doc. 1.) Respondent filed her opposition on October 2, 2020. (Doc. 5.) The Government replied on October 9, 2020. (Doc. 6.) Having considered the parties' briefing, and for the reasons set forth below, the Court recommends that the Petition be granted.

## I.    BACKGROUND[1]

The DEA is empowered by federal law to investigate violations of the federal Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801–971, and possesses authority to issue administrative subpoenas in support of its investigations, *id.* at § 876(a). Respondent is a neurologist engaged in pain management, and she prescribes narcotics and pain medications to her patients. (Doc. 6 at 1, 2 n.2.) The DEA is investigating Respondent's practices in prescribing controlled substances. (Doc.

_____
[1] Facts set forth in the background are taken from the parties' briefs and are undisputed except where noted.

1-2 at 4.)  As part of its investigation, the DEA issued the Subpoena to Respondent and served it on December 7, 2018.  (Doc. 1-2 at 1.)  The Subpoena seeks the production of medical records, from 2011 to the present, held by Respondent related to her treatment and prescriptions for controlled substances provided to twenty-five of her patients.  (Doc. 1-2 at 2.)  Respondent produced records for seven patients, for which she received signed consents, but has refused to produce any records for the remaining eighteen patients, for which no consents have been obtained.  (Doc. 1-2 at 2.)  The Government now seeks enforcement of the Subpoena.

## II.    DISCUSSION

Respondent makes three arguments as to why the Subpoena should not be enforced.  First, Respondent contends that patients have a heightened privacy interest in their medical records, and, consequently, procurement of the requested records can be obtained only via warrant, not administrative subpoena.  Second, Respondent alleges the Subpoena is overbroad and unduly burdensome.  Third, Respondent claims that because the Subpoena is seeking evidence that will be used in a criminal prosecution, the Subpoena is invalid without a full probable cause showing.  The Court addresses each argument in turn.

### A.  Respondent Cannot Vicariously Assert Her Patients' Fourth Amendment Rights

Respondent contends that patients have a constitutionally protected privacy interest in their medical records under the Fourth Amendment, and asserts, in a footnote, "[a]s a physician, [she] has standing to assert her patients' constitutional rights in challenging a government action that infringes on those rights."  (Doc. 5 at 7 n.5, 12.)  Given the privacy interests involved, Respondent alleges that the DEA must obtain a warrant to access the requested medical records; use of an administrative subpoena is unreasonable under the Fourth Amendment.[2]  (Doc. 5 at 12–13.)  The Government counters that Fourth Amendment rights are "personal and cannot be asserted by someone else," and regardless, case law establishes that a validly issued subpoena is an appropriate means for an agency to procure records as part of its investigation.  (Doc. 6 at 2–6.)

---

[2] The Court observes that, in making this argument, Respondent relies heavily on *Oregon Drug Prescription Monitoring Program v. U.S. Drug Enforcement Admin.*, 908 F. Supp. 2d 957 (D. Or. 2014), *rev'd*, 860 F.3d 1228 (9th Cir. 2017), as several paragraphs in her briefing are taken verbatim from the District of Oregon's opinion, but without any reference thereto.  (*See* Doc. 5 at 8–10.)

The Court agrees with the Government that Respondent cannot assert Fourth Amendment rights on behalf of her patients. The Supreme Court has long held that "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)); *Byrd v. United States*, 138 S. Ct 1518, 1530 (2018); *Brown v. United States*, 411 U.S. 223, 230 (1973); *Simmons v. United States*, 390 U.S. 377, 389 (1968); *Wong Sun v. United States*, 371 U.S. 471, 492 (1963). "The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd*, 138 S. Ct at 1530. To bring a claim under the Fourth Amendment, a party must establish that his or her *own* reasonable expectation of privacy has been infringed. *United States v. Taketa*, 923 F.2d 665, 669 (9th Cir. 1991); *accord Barry v. Freshour*, 905 F.3d 912, 914–15 (5th Cir. 2018) (holding that physician who was the target of an administrative subpoena could not assert his patients' privacy interests in their own medical records in a challenge to the subpoena).

Respondent's contention that she can assert her patients' Fourth Amendment rights is legally unsupported.[3] The cases on which Respondent relies, (*see* Doc. 5 at 7 n.5), do not involve infringements of a privacy interest under the Fourth Amendment. Although some of the cases cited by Respondent discuss a physician's Article III standing in various contexts,[4] the Supreme Court and the Ninth Circuit have repeatedly emphasized that standing under the Fourth Amendment is a matter of substantive Fourth Amendment law and "should not be confused with Article III standing, which is jurisdictional." *Byrd*, 138 S. Ct. at 1530; *United States v. Ewing*, 638 F.3d 1226, 1230 (9th Cir. 2011) (noting that Fourth Amendment standing is "analytically distinct" from Article III

---

[3] The Court notes that Respondent does not assert that her own reasonable expectation of privacy has been infringed— only that of her patients. (*See* Doc. 5 at 9–13.) Indeed, Respondent agreed to turn over records for seven patients in which signed consents had been obtained. (*See* Doc. 5 at 2.)

[4] The cases briefly referenced by Respondent do not support her general contention that she has standing to assert her patients' constitutional rights. For example, Respondent claims that *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52 (1976), stands for the proposition that "physicians 'clearly have standing' to assert their patients' constitutional rights in challenging abortion restrictions." (Doc. 5 at 7 n.5.) But a closer reading of the opinion reveals that the Supreme Court held that the "physician-appellants" in that case "clearly ha[d] standing" not based on any assertion of patients' rights, but because the physicians were criminally liable under the contested statute for performing certain abortions and had thus "assert[ed] a sufficiently direct threat of *personal* detriment." *Danforth*, 428 U.S. at 62 (emphasis added).

standing); *Taketa*, 923 F.2d at 669 ("Fourth amendment standing is quite different, however, from 'case or controversy' determinations of article III standing").  Thus, the cases cited by Respondent discussing Article III standing are inapposite to the instant case, where Article III standing is not at issue.  Therefore, Respondent has failed to assert a cognizable privacy interest in the subpoenaed medical records and cannot claim a Fourth Amendment violation on those grounds.

**B.  The Subpoena Is Not Overly Broad or Unduly Burdensome**

As discussed above, Respondent cannot allege violations of her patients' privacy rights under the Fourth Amendment.  Thus, Respondent's only remaining basis for challenging the Subpoena is that it is overly broad or unduly burdensome.  As part of a court's evaluation of an administrative subpoena, "a Fourth Amendment 'reasonableness' inquiry must . . . be satisfied." *Reich v. Montana Sulphur & Chemical Co.*, 32 F.3d 440, 444 n.5 (9th Cir. 1994).  But in "the context of an administrative [subpoena], the Fourth Amendment's restrictions are limited." *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1115 (9th Cir. 2012) (alteration in the original) (quoting *Montana Sulphur*, 32 F.3d at 448).  "An administrative subpoena is consistent with the Fourth Amendment if '[1] the investigation is authorized by Congress, [2] is for a purpose Congress can order, and [3] the documents sought are relevant to the inquiry.'" *Id.* (quoting *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946).)  "Beyond this[,] the requirement of reasonableness . . . comes down to [whether] specification of the documents to be produced [is] adequate, but not excessive, for the purposes of the relevant inquiry.  A subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *Id.* (citations and internal quotation marks omitted, alterations in the original).

Respondent does not dispute that the Subpoena meets the three-part test articulated in *Golden Valley Elec. Ass'n.*, and she fails to meet her high burden demonstrating that the Subpoena is overbroad or unduly burdensome.  *See E.E.O.C v. Children's Hospital Med. Ctr. of Northern California*, 719 F.2d 1426, 1428 (9th Cir. 1983) (explaining that, once initial standard is met, the court must enforce the subpoena unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome); *E.E.O.C. v. McLane Co. Inc.*, No. CV-12-02469-PHX-GMS, 2018 WL 1961162, at *1 (D. Ariz. Apr. 26, 2018) ("the respondent's

1  burden of proving that an administrative subpoena is overbroad or unduly burdensome 'is difficult

2  to meet.' [Citation.]").

3      As an initial matter, an administrative subpoena "may not be so broad so as to be in the

4  nature of a 'fishing expedition.' " *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988). Having

5  compared the information sought by the Subpoena to the purpose and scope of the DEA's

6  investigation, the Court finds that the Subpoena is not overbroad.

7      Here, the Subpoena seeks records related to Respondent's treatment and prescription for

8  controlled substances provided to twenty-five of her patients. Specifically, the Subpoena demands

9  the production of prescription records, patient files including health history and diagnoses,

10  communications with or about the patients, and billing records. (Doc. 1-1 at 2.) All of this

11  information is relevant to the DEA's investigation of Respondent's prescribing practices for the

12  reasons set forth by the Government: "records reflecting a patient's health status and condition" are

13  necessary to evaluate "the legitimacy of controlled substances prescribed"; "[c]ommunications may

14  reveal discussions bearing on the legitimacy of a patient's need for a prescription"; and " a patient's

15  method of payment and payment pattern are factors that may indicate improper prescribing,

16  rendering billing records directly relevant to DEA's inquiry." (Doc. 6 at 7.)

17      Respondent contends that the DEA is already in possession of records for seven of her

18  patients, and the DEA has "offered no evidence or explanation as to why it needs to review more

19  patient records to determine whether this physician is abusing her DEA registration." (Doc. 5 at

20  14.) The burden, however, is not on the Government to establish that the Subpoena is "no broader

21  than necessary to achieve its purpose." *Peters*, 853 F.2d at 697. "Rather, the party seeking to avoid

22  enforcement of the [subpoena] must prove that the inquiry is overbroad or unduly burdensome."

23  *Consumer Fin. Prot. Bureau v. Great Plains Lending, LLC*, No. CV142090MWFPLAX, 2014 WL

24  12685941 (C.D. Cal. May 27, 2014), *aff'd*, 846 F.3d 1049 (9th Cir. 2017). Respondent has not

25  demonstrated that the Subpoena seeks any information beyond that necessary to determine whether

26  she has violated the CSA. Therefore, her claim that the Subpoena is overbroad fails.

27      Next, an administrative subpoena is unduly burdensome "if either the cost of gathering this

28  information is unduly burdensome in the light of the company's normal operating costs, or gathering

1  the information would threaten [a respondent's] normal business operations."  *McClane Co. Inc.*,

2  2018 WL 1961162, at *2 (citation and internal quotation marks omitted, alteration in the original).

3  Respondent has not shown that compliance with the Subpoena would impose an undue burden on

4  her.  In fact, Respondent does not allege that she would be burdened at all.  Instead, she claims only

5  that "the bulk of [the burden] will fall on [her] patients, who without notice or an opportunity to

6  object, will have almost a decade of their private, confidential medical histories disclosed to

7  strangers without their consent and notice to them."  (Doc. 5 at 14.)  To the extent that Respondent

8  is attempting to again assert her patients' Fourth Amendment rights, the Court declines to address

9  this claim for the reasons previously explained, *see supra* Section II.A.

10       For the foregoing reasons, the Court concludes that Respondent has failed to show that the

11  Subpoena is unenforceable because it is overbroad or unduly burdensome.

12       **C.  A Full Probable Cause Showing Is Not Required**

13       Lastly, Respondent contends that the Subpoena, if issued as part of "a quest for evidence to

14  be used in a criminal prosecution," is invalid absent a full probable cause showing.  (Doc. 5 at 15.)

15  This claim is contrary to established law.

16       As the Ninth Circuit has observed, "The Supreme Court has refused to require that an agency

17  have probable cause to justify issuance of a subpoena."  *Golden Valley Elec. Ass'n*, 689 F.3d at 1115

18  (citing *United States v. Powell*, 379 U.S. 48, 57 (1964) and *Oklahoma Press Pub. Co.*, 327 U.S. at

19  215–16); *accord Becker v. Kroll*, 494 F.3d 904, 916–17 (10th Cir. 2007) ("Under Fourth

20  Amendment law, an investigatory or administrative subpoena is not subject to the same probable

21  cause requirements as a search warrant[,]" and "[t]hat the subpoena was issued administratively

22  with potential criminal ramifications does not change the analysis."); *In re Subpoena Duces Tecum*,

23  228 F.3d 341, 347–48 (4th Cir. 2000) (noting that the Fourth Amendment "imposes a probable cause

24  requirement only on the issuance of warrants," and "unless subpoenas are warrants, they are limited

25  by the general reasonableness standard of the Fourth Amendment . . . , not by the probable cause

26  requirement.").

27       As the Fourth Circuit explained in *In re Subpoena Duces Tecum*, requiring a showing of

28  probable cause prior to the issuance of any investigative subpoena "would be the virtual end to any

investigatory efforts by governmental agencies, as well as grand juries." 228 F.3d at 348.

> This is because the object of many such investigations—to determine whether probable cause exists to prosecute a violation—would become a condition precedent for undertaking the investigation. This unacceptable paradox was noted explicitly in the grand jury context in *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991), where the Supreme Court stated: [¶] ["][T]he Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists.["] This observation about the grand jury subpoena is likewise applicable to investigative subpoenas issued by governmental agencies.

*Id.* at 348–49. As the Government points out, (Doc. 6 at 4–5), the DEA is not only a criminal investigative agency, but also an administrative agency that oversees practitioners' controlled drug registrations, *see* 21 U.S.C. §§ 821 *et seq.*, and a civil enforcement agency with the power to pursue fines and injunctive relief against registered practitioners, *see, e.g.*, *id.* at §§ 842, 843(e). Requiring the agency to show probable cause, based merely on the prospect of criminal ramifications, prior to obtaining medical records as part of its investigation would impair its ability to carry out any of its functions. *Cf. United States v. Goldfine*, 538 F.2d 815, 819 (9th Cir. 1976) (rejecting the defendants' contention that an administrative inspection of a pharmacy was impermissible where the investigator suspected a criminal violation because "the administrative need for and the public interest in inspection continue to provide justification apart from the obtaining of evidence of crime.") (footnote omitted).

Furthermore, the cases relied upon by Respondent—*Michigan v. Tyler*, 436 U.S. 499 (1978), *United States v. Lawson*, 502 F. Supp. 158 (D. Md. 1980), *Camara v. Municipal Court*, 387 U.S. 523 (1967), *Marshall v. Barlow's Inc.*, 436 U.S. 307 (1978), and *U.S. v. Harrington*, 761 F.2d 1482 (11th Cir. 1985)—(Doc. 5 at 15), are factually distinguishable and do not support her contention.[5] For example, *Camara* and *Barlow's* both involved administrative searches, not subpoenas, and "[i]n each case, the [Supreme] Court held that an administrative warrant was required before such a search

---

[5] As out-of-circuit cases, *Lawson* and *Harrington* are not binding on this Court. In any event, *Harrington* is distinguishable as it involved an administrative subpoena issued to the respondent *after* he had already been criminally indicted. 761 F.2d at 1485. As for *Lawson*, the District of Maryland noted that its holding—that using administrative inspection warrants to conduct searches of pharmacies to gather evidence for a criminal prosecution is unlawful—potentially conflicted with a Ninth Circuit case, *Goldfine*, 538 F.2d 815, which is binding authority on this Court. 502 F. Supp. at 166 ("To the extent that [*Goldfine*], if at all, would permit the use of administrative inspections warrants on the facts of this case, the court declines to follow [it].").

1  could be conducted without the consent of the owner of the premises." *Donovan v. Lone Steer, Inc.*,

2  464 U.S. 408, 414 (1984); *Camara*, 387 U.S. at 525 (involving a housing inspector who sought to

3  inspect the premises of an apartment building); *Barlow's*, 436 U.S. at 309–10 (involving an

4  Occupational Safety and Health Act inspector who sought to conduct a search of non-public working

5  areas of an electrical and plumbing installation business). In *Tyler*, the Supreme Court held that an

6  entry into a building by government officials to fight a fire did not require a warrant, "and that once

7  in the building, officials may remain there for a reasonable time to investigate the cause of the

8  blaze," but "any additional entries to investigate the cause of the fire must be made pursuant to the

9  warrant procedures governing administrative searches." *Tyler*, 436 U.S. at 511.

10      The Supreme Court has distinguished the standard applied in cases involving administrative

11  searches from those involving administrative subpoenas, affirming that "when an administrative

12  agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be

13  sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will

14  not be unreasonably burdensome." *Donovan*, 464 U.S. at 415 (internal quotation marks omitted)

15  (quoting *See v. City of Seattle*, 387 U.S. 541, 544 (1967)). "[T]he defenses available . . . do not

16  include the right to insist upon a judicial warrant as a condition precedent to a valid administrative

17  subpoena." *Id.* The Court explained that the administrative search decisions "turned upon the effort

18  of the government inspectors to make non-consensual entries into areas not open to the public,"

19  facts that are "quite different" from an administrative subpoena for documents, where "no such entry

20  [is] made." *Id.* at 414.

21      Accordingly, the Court concludes that, in this case which involves an administrative

22  subpoena, a probable cause showing is not required.

23                    **III.    CONCLUSION AND RECOMMENDATION**

24      Based on the foregoing, the Court RECOMMENDS that the Petition to enforce the Subpoena

25  served by the DEA upon Respondent be granted.

26      These findings and recommendation are submitted to the district judge assigned to this

27  action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **twenty-one**

28  **(21) days** of service of this recommendation, any party may file written objections to these findings

and recommendations with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **December 9, 2020**                    /s/ *Sheila K. Oberto*

                                                    UNITED STATES MAGISTRATE JUDGE